# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JUSTON L. MORROW, | |
| Plaintiff, | No. 16-CV-2023-LTS |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

_____

The claimant, Juston L. Morrow (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Claimant contends that the Administrative Law Judge (ALJ) erred in determining he was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I. BACKGROUND

Claimant filed his application for SSI on March 13, 2013, alleging disability beginning January 15, 2006. AR 11.[1] Claimant was born in 1988, was 24 years old at the time he applied for SSI, and 26 years old at the time of the ALJ's decision. AR 11,

---

[1] "AR" refers to the administrative record below.

20-21, 164, 191-99. Claimant completed high school and had been placed in special education classes. AR 219-35, 236-50. Claimant had no past relevant work. AR 20.

On May 30, 2013, the Commissioner denied claimant's application and on August 9, 2013, denied his claim upon reconsideration. AR 11. On September 23, 2014, ALJ Jo Ann L. Draper held a hearing at which claimant and a vocational expert testified. AR 28-51. On November 17, 2014, the ALJ found claimant was not disabled. AR 11-21. The Appeals Council denied claimant's request for review. AR 1-6. Thus, the ALJ's decision became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On April 1, 2016, claimant filed a complaint in this Court. Doc. 3. The parties have since briefed the issues, and on October 24, 2016, the Honorable Leonard T. Strand, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of

2

opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves significant mental or physical activities. "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having the ability and aptitude necessary to perform most jobs. These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still perform past relevant work, then the claimant is considered not disabled. Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. A claimant's "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At Step One, the ALJ found claimant had not been engaged in substantial gainful activity since March 13, 2013. AR 13.

At Step Two, the ALJ determined claimant had the following severe impairments: "depressive disorder, anxiety disorder, obesity, asthma, personality disorder, metatarsalgia and learning disorder versus borderline intellectual functioning." *Id*.

At Step Three, the ALJ concluded that claimant did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. *Id*.

At Step Four, the ALJ determined claimant's RFC. The ALJ found that "claimant has the residual functional capacity to:

> [L]ift and carry no more than 50 pounds occasionally and 25 pounds frequently and to stand or walk for six hours in an eight-hour day. He can perform tasks that can be learned in 30 days or less, that involve no more than simple work-related decisions and that require little to no judgment with only occasional workplace changes. He is limited to jobs that do not involve any interaction with the public, and no more than occasional interaction with supervisors and coworkers. He cannot work at a

production-rate pace. In addition, he should have no more than occasional exposure to extreme cold, humidity or pulmonary irritants.

AR 15.

Based on this RFC assessment, at Step Five the ALJ determined that there were jobs in significant numbers in the national economy that the claimant could perform, including Router, Routing Clerk, and Mail Clerk. AR 20-21.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 789 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir.

2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant alleges the ALJ's residual functional capacity assessment was flawed for three reasons:

1. The ALJ failed to evaluate properly the work-related limitations from examining physician Dr. Ralph Scott. Doc. 13, at 3-8.

2. The ALJ failed to evaluate properly the opinions of Mr. Morrow's medication manager, Vicki Boling, ARNP. Doc. 13, at 8-14.

3. The ALJ failed to fully develop the record because the RFC was not supported by substantial medical evidence from a treating or examining source. Doc. 13, at 15-16.

I will address each of these arguments in turn.

### A. *The ALJ's Evaluation of Dr. Scott's Work-Related Limitations*

Claimant argues that the ALJ gave insufficient weight to the opinions of examining doctor, Ralph Scott, M.D. Doc. 13, at 3-8. Dr. Scott examined claimant on one occasion in February 2014. The examination involved Dr. Scott observing claimant, interviewing him, reviewing academic records, and administering some tests. AR 777-780. During the examination, Dr. Scott administered the Minnesota Multiphasic Personality Inventory II (MMPI-2) test. AR 779. The MMPI-2 requires at least eighth-grade language skills, so prior to administering the test Dr. Scott administered the Wide Range Achievement Test 3 (WRAT 3) to determine claimant's grade-level reading skills. *Id*. The test revealed claimant had eighth grade reading skills. *Id*. Dr. Scott concluded claimant "provided a valid interpretable profile which is clearly indicative of severe emotional fragility" and his profile was "indicative of acute psychological turmoil."

8

Dr. Scott diagnosed claimant as having a "Personality Change due to traumatic brain injury," and Generalized Anxiety Disorder, with bipolar, depressive, and OCD (obsessive compulsive disorder) features. AR 780. Dr. Scott included the following summary of his findings:

> Results of a record review and this evaluation underscore the severity of Juston's emotional fragility and provide little encouragement that he can presently succeed in gainful employment. However, the record also suggests that within-family therapy extending into possible vocational rehabilitative efforts, focusing on wide aptitude/ability differences, may enable Juston to succeed in a highly accommodative work setting.

AR 780.

The ALJ did not explicitly indicate what weight she gave to Dr. Scott's opinion. AR 19. The ALJ did opine that "the results of the MMPI 2 seem largely subjective, as they are based solely on the claimant's responses to questions regarding his symptoms." *Id*. The ALJ went on to note that claimant's report to Dr. Scott that claimant sometimes carries out activities without knowing later what he had been doing was not reflected in any treatment records. *Id*. The ALJ also found Dr. Scott's conclusion that claimant was suffering "acute psychological turmoil" inconsistent with the fact "claimant has not required hospitalization for his alleged symptoms." *Id*. The ALJ also found claimant's daily activities, such as using computers, Skyping with friends, and visiting the library were inconsistent with Dr. Scott's conclusion that claimant required a highly accommodative work setting. *Id*.

I believe the ALJ was simply wrong in describing the MMPI-2 as a subjective test. The MMPI-2 is widely used by psychiatrists and psychologists. Many courts have found

9

the MMPI-2 to be an objective medical test.[2] *Smith v. Apfel*, No. 97-35786, 1998 WL 833621, at *1 (9th Cir. 1998) (describing the MMPI as objective medical evidence); *Christy v. Colvin*, No. 14-cv-5362-JRC, 2014 WL 5782362, at *8 (W.D. Wash. Nov. 6, 2014) (same); *Soto-Ramirez v. Astrue*, No. 5:08-cv-112-Oc-GRJ, 2009 WL 1159988, at *8 (M.D. Fla. Apr. 29, 2009) (same); *McClinsey v. Astrue*, No. 08-23, 2008 WL 5334725, at *10 (W.D. Pa. Dec. 16, 2008) (same); *Walker v. Barnhart*, No. 05-4094-JAR-JTR, 2006 WL 3798696, at *2 (D. Kan. Dec. 20, 2006) (finding that "MMPI results are objective evidence"). To the extent the ALJ was concerned that the test relies on self-reporting of symptoms by the patient, the MMPI-2 has internal validity testing measures which reflect when patients are fabricating or exaggerating symptoms. Here, the MMPI-2 results were determined to be valid and not indicative of someone malingering. AR 779.

That the ALJ erred in viewing the MMPI-2 results as a subjective finding instead of objective medical evidence does not, however, necessarily require reversal of the ALJ's decision if there is otherwise substantial evidence in the records as a whole to support the ALJ's decision. I find there is.

As noted, the ALJ did not explicitly state what weight she gave to Dr. Scott's opinion. When evaluating medical opinion evidence, an ALJ must explain in the written decision the weight given to any opinions from medical sources. *See* 20 C.F.R. § 416.927(e)(2)(ii). Not only is this necessary to comply with the regulations, but it also assists the Court in its review of the decision. *See Willcockson v. Astrue*, 540 F.3d 878,

---

[2] Claimant cited *Clay v. Barnhart*, 417 F.3d 922, 926 (8th Cir. 2005) for the proposition that the Eighth Circuit Court of Appeals has described the MMPI-2 as an objective test. That is not accurate. The reference to an "objective" MMPI test score in *Clay* is a quotation of the doctor's report and conclusion, not a court holding or even an adoptive description.

10

880 (8th Cir. 2008). Thus, it can be reversible error where an ALJ fails to clearly articulate the weight given to a medical source's opinion. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (reversing and remanding ALJ's decision where ALJ did not make it clear the weight assigned to the opinion of an examining physician). Remand is not always required, however, where the extent to which the ALJ considered the opinion is otherwise apparent in the ALJ's decision and RFC restrictions. *See Alcott v. Colvin*, No. 4:13-CV-01074-NKL, 2014 WL 4660364, at *5 (W.D. Mo. Sept. 17, 2014) (finding remand unnecessary where ALJ discussed the medical opinion, ALJ's RFC determination was largely consistent with limitations in the medical source's opinion, and where the ALJ explained the reason for not adopting one limitation).

In this case, the Commissioner concluded the ALJ "gave no weight" to Dr. Scott's opinion. Doc. 14, at 6. In reviewing the ALJ's decision and her RFC assessment, I agree that it appears the ALJ gave Dr. Scott's medical opinion no weight. The question then is whether that was justified. I believe it was. First, as a one-time examining consultative physician, Dr. Scott's opinion was not entitled to any special weight. *Kirby*, 500 F.3d at 709 (the opinion of a consultant who examined claimant on a single occasion deserves no special weight). Furthermore, as the Commissioner points out (Doc. 14, at 6), Dr. Scott did not identify any work-related limitations in his opinion. Rather, Dr. Scott's opinion consists of a vague assertion that claimant has "emotional fragility," whatever that means, and a conclusion that there is "little encouragement that he can presently succeed in gainful employment." AR 780. The former label, "emotional fragility," provides no guidance to the Commissioner regarding needed work-related limitations. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) ("It is appropriate . . . to disregard statements of opinion by a treating physician that consists of nothing more than vague, conclusory statements.") (internal quotation marks and

11

citation omitted). The ALJ could properly disregard the latter conclusion regarding claimant's ability to succeed in gainful employment because it is not a medical opinion; rather, it is opinion regarding employability that is for the Commissioner alone to make. *See*, *e.g.*, *Perkins*, 648 F.3d at 898 (medical source's opinion that claimant was "disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.") (internal quotation marks and citation omitted); *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ("[A] treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' because it invades the province of the Commissioner to make the ultimate determination of disability.") (quoting 20 C.F.R. §§ 416.927(e)(1), (3)) (citation omitted).

The closest Dr. Scott comes to expressing an opinion containing a work-related limitation is his conclusion that "within-family therapy extending into possible vocational rehabilitative efforts, focusing on wide aptitude/ability differences, may enable [claimant] to succeed in a highly accommodative work setting." AR 780. This opinion is of little assistance, however, because Dr. Scott provided no explanation of what he believes constitutes a "highly accommodative work setting." Again, the phrase is vague. In any event, the ALJ included in her RFC assessment limitations that would be consistent with a psychologically accommodative work setting. The ALJ provided that claimant should be limited to "tasks that can be learned in 30 days or less, that involve no more than simple work-related decisions and that require little to no judgment with only occasional workplace changes." AR 15. The ALJ also limited claimant "to jobs that do not involve any interaction with the public, and no more than occasional interaction with supervisors and coworkers" and a pace less than "production-rate." *Id*.

To the extent Dr. Scott contemplated further, unstated accommodations, the ALJ found the totality of the evidence inconsistent with some of Dr. Scott's other observations. For example, Dr. Scott noted that claimant reported that he had periods of carrying out activities that he could not later recall. AR 19, 779. The ALJ noted that this claimed lack of recall did not appear in any medical records. AR 19. Dr. Scott opined that claimant's test results were indicative of "acute psychological turmoil" (AR 19, 779), but the ALJ noted this appeared inconsistent with the absence of any hospitalization for psychological reasons. AR 19. The ALJ also noted that a "highly accommodative workplace" need was inconsistent with claimant's daily activities involving long periods of using the computer, Skyping with friends, and attending the public library. AR 19. Although some evidence may support the opposite conclusion, the ALJ's evaluation of the evidence in this case is sufficiently within the ALJ's zone of choice that this Court should not overturn her decision.

Accordingly, I respectfully recommend the Court find the ALJ did not err in considering Dr. Scott's opinion in arriving at her RFC assessment.

### B. *The ALJ's Evaluation of Opinions of Vicki Boling*

Claimant argues that the ALJ erred in giving little weight to the opinion of Vicki Boling, ARNP, claimant's treating nurse practitioner. Ms. Boling completed two mental medical source statements, one in 2013 and another in 2014. AR 759-64, 802-807. She identified a number of work-related limitations she thought appropriate (AR 761-62) and concluded claimant would be unable to complete a normal work week without becoming anxious and depressed. AR 804.

The parties agree that Ms. Boling is not an acceptable medical source. Doc. 13, at 8-9; Doc. 14, at 9 n.2. Even though Boling is not an "acceptable medical source," an

ALJ must consider such opinions in making a final disability determination. 20 C.F.R. § 416.913. When considering the opinion of a source that is classified as a "not acceptable medical source" an ALJ should consider such factors as the nature and extent of the relationship between the source and the claimant, "the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03P, 2006 WL 2329939, at *1-5 (Aug. 9, 2006). *See also Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p, and concluding that "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

Here, the ALJ thoroughly reviewed and addressed Ms. Boling's opinions. The ALJ noted the Mental Medical Source Statement by Dr. Marvin Piburn and Boling and their conclusion that "claimant has no useful ability to function in several cognitive areas, including making simple work decisions and completing a normal workday and workweek without interruptions from psychologically based symptoms." AR 19. The ALJ gave little weight to these opinions, however, finding them "not consistent with other evidence of record." *Id*. In particular, the ALJ found the opinions inconsistent with "claimant's activities of daily living, such as using computers, playing videogames for hours and cooking his own meals." *Id*. The ALJ also found claimant's treatment records inconsistent with their opinions because they "often indicate the claimant's attention and concentration were within normal limits, or his memory functions were intact." *Id*. Finally, the ALJ noted that even claimant testified that he could probably work if the job

14

had "little social contact" and concluded that "claimant is quite capable [of working] when he feels so inclined." *Id*. Ms. Boling's mental medical source statement expressed her opinion of claimant's limitations in checkbox form. AR 761.

Having reviewed the entire record, I find the ALJ properly considered Boling's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated her reasons for finding Boling's opinions to be afforded "little weight," and for finding her opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such source's opinions with the record as a whole). It is also important to note that opinions expressed in checklist format, like Ms. Boling's, are of limited evidentiary value. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Finally, to the extent that Ms. Boling opined that claimant would not be able to complete a normal work week (AR 804), that again is not a medical opinion, but, rather, an issue reserved for the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight.").

Claimant takes issue with the ALJ's evaluation of the import of claimant's ability to play videogames, arguing that it is not reflective of the ability of a person to work full time. Doc. 13, at 11. Claimant also cites various medical records which reflected claimant's subjective complaints and some observations of claimant's appearance. Doc. 13, at 12-14. First, it was not improper for the ALJ to consider claimant's ability to concentrate enough to play videogames for hours as some evidence of his ability to work.

15

*See Bondurant v. Astrue*, No. 09-328 ADM/AJB, 2010 WL 889932, at *18 (D. Minn. Mar. 18, 2010) (finding claimant's ability to "go shopping, interact with his dogs, play videogames, read, and watch television" inconsistent with his claimed limitations). Second, the ALJ was acting well within her discretion to afford little weight to an opinion where it rests on the claimant's subjective complaints. *See Kirby*, 500 F.3d at 709 ("The ALJ was entitled to give less weight to Dr. Harry's opinion, because it was based largely on Kirby's subjective complaints rather than on objective medical evidence."). In the end, it is the ALJ's responsibility to weigh conflicting evidence and to resolve disagreements among physicians. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Accordingly, even if the Court could draw a different conclusion, it should affirm the ALJ's decision because it is supported by substantial evidence on the record as a whole. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Accordingly, I respectfully recommend the Court find the ALJ did not err in evaluating Ms. Boling's opinion.

### C. *The ALJ's Responsibility to Develop the Record*

Claimant argues the ALJ erred in failing to fully develop the record because it does not contain an opinion from a treating or examining physician as to claimant's work-related limitations. Doc. 13, at 15-16. Claimant argues this case is similar to *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), which the claimant cites for the proposition that "it was improper for the ALJ to rely on the opinions of reviewing physicians alone." *Id.* at 15. The Commissioner argues that the ALJ had "sufficient information to make an informed decision and, thus was not required to obtain additional opinion evidence." Doc. 14, at 13.

16

It is well-established that the ALJ has a duty to fully develop the record. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). "The ALJ's duty to develop the record extends even to cases . . . where an attorney represented the claimant at the administrative hearing . . . . The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." *Id.* (internal citations omitted).

Nevertheless, I find that the record was fully developed here. Relevant medical and other evidence on the record support all portions of the ALJ's RFC assessment. Again, the RFC is a medical question of what the claimant is still able to do given her mental and/or physical limitations. *Lewis*, 353 F.3d at 646 (8th Cir. 2003). The claimant has the burden to "provid[e] the evidence the Commissioner will use to determine the RFC." 20 C.F.R. § 416.945(a)(3). All relevant medical and other evidence is used to determine the RFC. *Id.*

This case is distinguishable from *Nevland*. The Eighth Circuit Court of Appeals in *Nevland*, reversed a denial of benefits and remanded the case for the following reasons:

> In spite of the numerous treatment notes discussed above, not one of [claimant]'s doctors was asked to comment on his ability to function in the workplace . . . . In the case at bar, there is no *medical* evidence about how [claimant]'s impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [claimant]'s RFC . . . . In our opinion, the ALJ should have sought such an opinion from [claimant]'s treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [claimant]'s mental and physical residual functional capacity.

204 F.3d at 858 (emphasis in original). The absence of statements of treating and examining sources, however, does not automatically mandate remand. *See Mann v.*

17

*Colvin*, 100 F. Supp.3d 710, 722 (N.D. Iowa 2015) ("Even without an opinion from a treating or examining source, the ALJ's decision may be affirmed if there is other medical evidence demonstrating the claimant's ability to function in the workplace.") (citation omitted); *see also Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995) (finding claimant's RFC assessment was proper where the ALJ did not "rely solely on the reviewing physicians in this case."). Here the ALJ did not just rely on the statements of reviewing physicians. Here, the ALJ relied on the record as a whole as is reflected in the fact the ALJ imposed limitations in addition to those identified by the state agency reviewing physicians. AR 15 (limiting claimant to tasks he could learn in 30 days or less, that do not involve any interaction with the public and no more than occasional interaction with supervisors and coworkers, at a pace slower than production-rate). Thus, here, unlike in the *Nevland* case, substantial evidence in the record as a whole supported the ALJ's RFC assessment without the need to further develop the record. *See Hattig v. Colvin*, No. 5:12-cv-04092-MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013) (holding that *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion").

Accordingly, I respectfully recommend the Court find the ALJ did not err in failing to develop the record.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the

18

service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 17th day of January, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa