# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JUSTON L. MORROW, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. C16-2023-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 16. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Juston L. Morrow's application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385 (the Act).

Morrow has filed timely objections (Doc. No. 17) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

3

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Morrow applied for SSI on March 13, 2013, alleging he became disabled on January 15, 2006, due to depressive disorder, anxiety disorder, obesity, asthma, personality disorder, metatarsalgia and learning disorder versus borderline intellectual functioning. Doc. No. 16 at 5 (citing Administrative Record (AR) at 13). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found at step five that that there were jobs in significant numbers in the national economy that Morrow could perform based on his residual functional capacity (RFC). As such, the ALJ found that Morrow was not disabled as defined in the Act. Morrow argues the ALJ erred in determining that he was not disabled because:

1. The ALJ failed to evaluate properly the work-related limitations from examining physician Dr. Ralph Scott. Doc. No. 13 at 3-8.

2. The ALJ failed to evaluate properly the opinions of Mr. Morrow's medication manager, Vicki Boling, ARNP. Doc. No. 13 at 8-14.

3. The ALJ failed to fully develop the record because the RFC was not supported by substantial medical evidence from a treating or examining source. Doc. No. 13 at 15-16.

*See* Doc. No. 16 at 8. Judge Williams addressed each argument separately in his R&R.

With regard to Dr. Scott's work-related limitations, Judge Williams noted that Dr. Scott had examined Morrow on one occasion in February 2014, during which he

interviewed Morrow, reviewed academic records and administered some tests. Doc. No. 16 at 8. Dr. Scott summarized his findings as follows:

> Results of a record review and this evaluation underscore the severity of Juston's emotional fragility and provide little encouragement that he can presently succeed in gainful employment. However, the record also suggests that within-family therapy extending into possible vocational rehabilitative efforts, focusing on wide aptitude/ability differences, may enable Juston to succeed in a highly accommodative work setting.

*Id.* at 9 (citing AR at 780). The ALJ did not describe the weight she assigned to Dr. Scott's opinion, but stated that the results of the Minnesota Multiphasic Personality Inventory II (MMPI-2) test seemed "largely subjective." *Id.* (citing AR 19). She also found Dr. Scott's opinion that Morrow was suffering "acute psychological turmoil" to be exaggerated because Morrow was not hospitalized. Finally, she found Dr. Scott's opinion to be inconsistent with Morrow's daily activities.

Judge Williams concluded the ALJ erred in describing the MMPI-2 as a subjective test, but deemed it harmless because substantial evidence in the record as a whole supported the ALJ's decision. Likewise, while the ALJ erred in failing to describe the weight she gave to Dr. Scott's opinion, the error was harmless because it was clear that the ALJ gave his opinion no weight. Judge Williams found there were good reasons for discounting Dr. Scott's opinion. Dr. Scott was a one-time examining consultative physician and he did not identify any work-related limitations in his opinion. His vague assertion that Morrow had "emotional fragility" did not provide any guidance of work-related limitations and his conclusion that there was "little encouragement that he [could] presently succeed in gainful employment" was a decision for the ALJ.

To the extent Dr. Scott's conclusion that "within-family therapy extending into possible vocational rehabilitative efforts, focusing on wide aptitude/ability differences, may enable [Morrow] to succeed in a highly accommodative work setting" could be read as a work-related limitation, Judge Williams noted that the ALJ's RFC assessment

5

provided for a psychologically-accommodative work setting. He found that various inconsistencies between Dr. Scott's findings and the record as a whole did not support further accommodations. For these reasons, he found the ALJ did not err in weighing Dr. Scott's opinion and concluded that while some evidence may have supported the opposite conclusion, the ALJ's evaluation was "sufficiently within the ALJ's zone of choice." Doc. No. 16 at 12.

With regard to ARNP Boling's opinion, Judge Williams noted that she had completed two mental medical source statements (in checkbox form) as Morrow's treating nurse practitioner.[1] *Id.* at 13. Boling concluded that Morrow would not be able to complete a normal work week without becoming anxious and depressed. Specifically, she and Dr. Piburn concluded that Morrow "has no useful ability to function in several cognitive areas, including making simple work decisions and completing a normal workday and workweek without interruptions from psychologically based symptoms." *Id.* at 14 (citing AR at 19). The ALJ found these opinions were inconsistent with Morrow's activities of daily living including using computers, playing video games for hours and cooking his own meals. *Id.* She also noted that Morrow's treatment records indicated that his attention and concentration were often within normal limits and his memory functions were intact. Morrow had also testified that he thought he could probably work if the job had "little social contact." *Id.*

Judge Williams found the ALJ did not err in considering Boling's opinion. He noted the ALJ explained his reasons for giving Boling's opinions "little weight." He found it was not error for the ALJ to cite Morrow's ability to play hours of video games as inconsistent with disability and to discount Boling's opinion because it was based on Morrow's subjective complaints.

---

[1] One of these statements is also signed by Dr. Marvin Piburn, Morrow's psychiatrist. *Compare* AR at 764 (dated December 13, 2013) *with* AR at 807 (dated August 7, 2014). The ALJ acknowledged both medical opinions in her decision. *See* AR at 19.

Finally, with regard to the ALJ's duty to develop the record, Judge Williams addressed Morrow's argument that the ALJ's decision was not supported by substantial evidence under *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), because there was not an opinion from a treating or examining physician in the record regarding Morrow's work-related limitations. He noted that the ALJ relied on the record as a whole in identifying Morrow's work-related limitations and not just those identified by the state agency reviewing physicians. He also cited authority from this court that *Nevland* does not require remand in every case lacking a treating doctor's opinion.

For all of the above reasons, Judge Williams recommends that I affirm the Commissioner's decision that Morrow is not disabled.

## IV. DISCUSSION

### A. *Morrow's Objections*

Morrow objects to Judge Williams' analysis on each of the three issues above. As such, I will review these issues de novo. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).

### B. *Analysis*

#### 1. *Dr. Scott's Opinion*

Morrow argues the ALJ committed two errors that were not harmless: (1) she failed to assign a weight to Dr. Scott's opinion and (2) she reasoned the MMPI-2 was a subjective test. He contends the court cannot provide a post hoc rationalization for these errors. Furthermore, he argues his daily activities are not a good reason to discredit Dr. Scott's opinion. He argues there is no evidence in the record that he can perform these activities (using computers, Skyping with friends, going to the library independently)

eight hours a day, five days a week. He performs those activities at his own pace and faces no consequences if interrupted.²

With regard to video games, Morrow argues there is no evidence in the record establishing that he plays video games "for hours" as found by the ALJ.³ While the record states that he plays them daily, it also states that he has "trouble concentrating" and can pay attention only for a "few minutes at a time." Doc. No. 17-1 at 5 (citing AR at 370-72). He cites Seventh Circuit cases in which that court has expressed doubt that playing video games requires the same concentration as full-time work. *See Voigt v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 801 (7th Cir. 2016). Morrow contends Dr. Scott's opinion supports the specific work-related limitations identified by ARNP Boling and that such limitations are consistent with the record as a whole.

With regard to the errors noted by Judge Williams, I agree that they are harmless. First, Judge Williams reasoned that while the ALJ failed to explain the weight she gave Dr. Scott's opinion, remand was not required because it was clear from the record that the ALJ gave it no weight. I agree. Moreover, as Judge Williams pointed out, Dr. Scott's opinion was not entitled to any special weight as a one-time examining physician

---

² Morrow contrasts this with the vocational expert (VE) testimony that a worker requiring two or more unscheduled breaks per day of 10 to 15 minutes cannot perform competitive employment. Likewise, an individual who cannot perform at a consistent pace throughout the day and worked at a slow pace 25 percent of the work day would not be able to perform competitive employment. *See* Doc. No. 17-1 at 5.

³ The ALJ cites Exhibit 14E in support of her finding that Morrow plays video games for hours. This exhibit is a third party function report completed by Michael Owens, who identifies his relationship with Morrow as "staff." He indicates that Morrow spends "[h]alf the day at least playing video games." AR at 327. Morrow himself testified that he essentially plays video games with any free time he has. *See* AR at 44 ("When I don't have anything going on, I wake up, play videogames, go back to bed. That's my day. When I have stuff to do, I get up at the right time, get dressed, looking nice, and go to meeting or something I need to go to, go back home, play videogames, go to bed.").

and, in any event, his opinion did not identify any specific work-related limitations. *See* Doc. No. 16 at 10-11.

Second, the ALJ's incorrect characterization of the MMPI-2 as a subjective test was only one reason the ALJ discounted Dr. Scott's opinion. The ALJ also pointed out inconsistencies between that opinion and other evidence in the record. In other words, her error regarding the MMPI-2 did not taint the rest of her reasoning regarding Dr. Scott's opinion. She set forth other good reasons, supported by the record as a whole, for not giving Dr. Scott's opinion controlling weight.

With regard to whether Morrow's daily activities are a good reason for discounting Dr. Scott's opinion, I agree with Judge Williams that they are. The ALJ stated "the claimant's ability to use computers, Skype with his friends and go to the public library independently, contradicts Dr. Scott's opinion that the claimant may require a highly accommodative work setting." AR at 19. She stated that while Morrow may have "difficulty working with or interacting with others on a sustained basis," he should otherwise "have the ability to understand, remember and carry out at least simple routine tasks." *Id*.

Morrow argues his daily activities do not support the conclusion that he can perform work eight hours a day, five days a week, without interruptions. This is a separate issue from whether Morrow's daily activities contradict Dr. Scott's opinion that Morrow requires a "highly accommodative work setting." Because Dr. Scott did not explain what he meant by this phrase, the ALJ's RFC could be considered "highly accommodative." In any event, the ALJ pointed out that Morrow's daily activities suggest he does not need significant accommodations in certain areas. I agree with Judge Williams that the inconsistency between Morrow's daily activities and Dr. Scott's vague opinion is a sufficient reason to discredit it. Morrow's daily activities demonstrate that he has some ability to work independently, complete simple tasks and engage in limited social interaction. Whether these activities suggest Morrow can maintain competitive

9

employment is a separate issue. Taken alone, these activities (including playing video games) may not establish an ability to maintain competitive employment. However, combined with other evidence in the record, including Morrow's admissions and other medical evidence, I find they support the ALJ's decision that he is able to perform work within the limitations of the RFC. For these reasons, I agree with Judge Williams regarding the ALJ's consideration of Dr. Scott's opinion.

### 2. *ARNP Boling's Opinion*

Morrow argues ARNP Boling's opinion is consistent with Dr. Scott's and, based on the ALJ's alleged errors with regard to Dr. Scott's opinion, Boling's opinion should be re-evaluated as well.

The ALJ gave little weight to the opinions of Boling, Morrow's counselor and Dr. Piburn, Morrow's former psychiatrist. Boling and Dr. Piburn found Morrow had no useful ability to function in several cognitive areas, including making simple work decisions and completing a normal workday and workweek without interruptions from psychologically-based symptoms. AR 19. The ALJ gave these opinions little weight, finding them inconsistent with Morrow's activities of daily living, which demonstrated he had the capacity for simple tasks, similar to those found in work settings. *Id.* Morrow's treatment records also indicated his attention and concentration were often within normal limits or his memory functions were intact. *Id.* Morrow had also admitted he could probably do a job if it had little social contact. *Id.*

Morrow argues that the ALJ's error in finding the MMPI-2 was subjective evidence adversely affected the ALJ's decision to discount Boling's opinion. Nothing in the ALJ's decision indicates that her analysis of one opinion was influenced by another. She addressed each medical opinion separately and did not rely on her findings as to Dr. Scott's opinion to discredit Boling's. The ALJ's decision clearly discounts both opinions

based on Morrow's daily activities and other medical evidence in the record. I find no error with regard to the ALJ's evaluation of Boling's opinion.

### 3. *Medical Evidence from a Treating or Examining Source*

Morrow argues the RFC is not supported by substantial medical evidence because the ALJ did not rely on a treating or examining source opinion. He states that Dr. Scott identified general limitations supported by objective evidence that the ALJ should have credited. He also notes that the non-examining state agency psychological consultants who reviewed Morrow's claim in 2013 did not have the opportunity to review Dr. Scott's 2014 report. He contends the ALJ improperly "filled in the holes" of the medical evidence in developing the RFC.

In analyzing the RFC, the ALJ noted the medical evidence shows that Morrow is capable of keeping focus and attention for prolonged periods, when the activity is something he enjoys. AR at 17. Morrow admitted that he thought he could work if the job did not require a lot of interpersonal contact and treatment notes indicated that he told providers he was not working because he was trying to get on disability. *Id.* The consultative examiner assigned Morrow a global assessment functioning score of 62, indicating only mild symptoms and impairment. She concluded his intellectual functioning was sufficient for competitive employment and Morrow lacked motivation. *Id.* While the ALJ discounted opinions from Boling, Dr. Piburn and Dr. Scott, she provided good reasons for doing so, and relied on other medical evidence and the state agency psychological consultant opinions in developing the RFC.

Judge Williams concluded that the RFC was sufficiently supported by medical evidence in the record even in the absence of a credited treating or examining source opinion. *Id.* at 17-18. He distinguished *Nevland,* noting that the ALJ here did not rely solely on the statements of the state agency psychological consultants because the ALJ imposed additional limitations that they had not identified (limiting claimant to tasks he

could learn in 30 days or less, no interaction with the public and no more than occasional interaction with supervisors and coworkers and a slower than production-rate pace). *Id.* at 18. These limitations were based on medical records, Morrow's testimony and other evidence in the record.

The need for treating and examining source opinions arises out of the ALJ's duty to develop the record. In *Nevland,* the Eighth Circuit Court of Appeals stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson,* 490 F.2d 1247, 1248–49 n. 3 (8th Cir.1974)."

*Id.* [emphasis in original]. However, *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin,* No. C12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013). Even without an opinion from a treating or examining source, the ALJ's decision may be affirmed if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.; see also Agan v. Astrue,* 922 F.Supp.2d 730, 756 (N.D. Iowa 2013). The question is whether there is sufficient evidence of "how [the claimant's] impairments … affect [her] residual functional capacity to do other work," or her "ability to function

in the workplace." *Hattig,* 2013 WL 6511866, at *11 (quoting *Nevland,* 204 F.3d at 858).

This case does not present a *Nevland* issue because the record contains opinions from treating, examining and consultative providers. In other words, the record was fully developed, but the ALJ did not give the opinions the weight that Morrow argues they deserve. As discussed above, I find the ALJ provided good reasons for giving Dr. Scott's opinion no weight and Boling's opinion little weight. Moreover, I find that the RFC is supported by substantial evidence in the record as a whole, including medical evidence. While the ALJ did not find Morrow's limitations were as debilitating as Boling's and Dr. Scott's opinions suggested, she did impose limitations that were consistent with the record as a whole. As Judge Williams noted, the ALJ not only relied on the state agency psychological consultants in imposing these limitations, but also relied on treatment records and Morrow's own testimony. I find no error with regard to the RFC assessment and find it is supported by substantial evidence in the record as a whole.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Juston Lee Morrow's objections (Doc. No. 17) to the Report and Recommendation are **overruled**;

2. I **accept** Chief United States Magistrate Judge C.J. Williams' January 17, 2017, Report and Recommendation (Doc. No. 16) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

    a. The Commissioner's determination that Morrow was not disabled is **affirmed**; and

    b. Judgment shall enter against Morrow and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 18th day of August, 2017.

_____
Leonard T. Strand, Chief Judge